**The CIT GROUP/SALES FINANCING INC., Plaintiff/Respondent,**

v.

**John D. LARK, individually and d/b/a John D. Lark and Associates, Defendant/Appellant.**

No. 66289.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 1, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 8, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Charles A. Hapke, Diedre W. Foster, Weldon Springs, for appellant.

Theodore D. Dearing, Dearing & Hartzog, Clayton, for respondent.

CRANE, Chief Judge.

The CIT Group/Sales Financing, Inc. (CIT) brought an action against John D. Lark to recover damages for breach of monthly payment obligations under a computer equipment lease agreement. Lark filed a counterclaim to recover damages for breach of the same agreement, claiming that he did not receive a certain software program identified as "release ten drivers" which he contended was included in the lease agreement. The trial court entered judgment in the amount of $18,562 on a jury verdict in favor of CIT on CIT's petition and directed a verdict at the close of defendant's evidence in favor of CIT on Lark's counterclaim. Lark appeals. We affirm.

Lark owns an architectural firm. After conducting its own research, Lark's firm decided to acquire an Auto CAD work station from the Trillian Computer Company on which to run its computer-aided drafting program. The parties agreed that Heritage Fi-

nancial Services would purchase the goods from Trillian and then lease them to Lark. Lark entered into a sixty-one month equipment lease agreement dated June 29, 1989 with Heritage.

The agreement listed the items leased to Lark as:

1 ACAD RISC WORKSTATION WITH 19″ HITACHI SERIAL NO. M17ORISC-19

4 MB W/G 80 NS

1 KURTA IS/ONE 12 × 12 INPUT SYSTEM WIRELESS

4–BUT PUCK, ACAD TEMPLATE

The agreement also stated:

5. ... LESSEE MAY NOT TERMINATE ITS OBLIGATIONS HEREUNDER FOR ANY REASON WHATSOEVER INCLUDING, WITHOUT LIMITATION, THE FAILURE OF THE EQUIPMENT TO OPERATE PROPERLY.

7. DISCLAIMER OF WARRANTIES. LESSEE ACKNOWLEDGES THAT THE EQUIPMENT AND THE ABOVE SUPPLIER HAVE BEEN SELECTED BY LESSEE. THAT LESSEE LEASES THE EQUIPMENT "AS–IS" AND ACCORDINGLY THAT LESSOR MAKES NO EXPRESS WARRANTY AND SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTY AS TO THE EQUIPMENT INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IF AN ITEM DOES NOT FUNCTION PROPERLY, LESSEE WILL MAKE ANY RESULTANT CLAIMS AGAINST THE SUPPLIER OR MANUFACTURER.

Lark testified that he signed, but did not date, a Certificate of Acceptance and returned it to Heritage with a letter dated July 11, 1989. The certificate stated:

1. THIS CERTIFICATE OF ACCEPTANCE IS TO BE SIGNED, DATED AND MAILED TO LESSOR AT ITS ADDRESS SET FORTH ABOVE WHEN ALL THE EQUIPMENT LISTED HAS BEEN DELIVERED AND IS ACCEPTABLE FOR ALL PURPOSES OF THE LEASE REFERENCED ABOVE.

2. DO NOT SIGN UNLESS ALL ITEMS ARE ACCEPTABLE.

The July 11 letter stated in part:

We are still experiencing some minor problems and have not yet dated complete [sic] the Certificate of Acceptance. For your information:

* We received all components except additional 4 megs RAM.

* Experienced bad RAM errors on setup and Trillian shipped an additional 4 megs RAM to us Federal Express, which we swapped out and returned the original 4 megs to them.

* Trillian is shipping an additional 4 megs RAM to us—not yet received.

* We are still experiencing random lock-ups and system crashes which appear to be from the Trillian Accelerator Board but have not yet resolved with them.

Lark testified that he later received 4 megs RAM. On July 28, 1989 Heritage assigned the agreement to CIT. Lark admitted that he made no payments to CIT after April 1, 1991.

*Parol Evidence Rule*

■ In his first point Lark contends that the trial court erred in excluding evidence that a release ten drivers software program was to have been included in the leased equipment. In his second point he argues the trial court erred in excluding evidence of the non-delivery of the release ten drivers software and his resulting damages,[1] contending that the evidence was relevant and

1. The damage and breach of contract arguments relate to Lark's counterclaim which we treat

under the discussion of Lark's third point, *infra*.

material to his affirmative defense and counterclaim. The trial court excluded the evidence relating to this software and its non-delivery on the basis that such evidence would violate the parol evidence rule. Lark argues that this evidence did not violate the parol evidence rule because the agreement was incomplete and patently ambiguous in its description of the goods to be leased and the evidence was offered to show failure of consideration.

■ The parol evidence rule prohibits evidence of prior or contemporaneous oral agreements which vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident or erroneous admission. *Jake C. Byers, Inc. v. J.B.C. Inv.*, 834 S.W.2d 806, 811 (Mo.App. 1992); *Aluminum Prod. Enters. v. Fuhrmann Tooling and Mfg. Co.*, 758 S.W.2d 119, 124 (Mo.App.1988). This rule is a substantive rule which limits the evidence from which inferences may be drawn and which, in turn, defines the limits of the contract. *Byers*, 834 S.W.2d at 812. The rule is justified on two premises: (1) a written document is more reliable and accurate than fallible human memory, and (2) varying written terms by extrinsic oral evidence opens the door to perjury. *Id.*

■ The parol evidence rule applies to complete agreements. If a contract appears to be complete on its face, it is conclusively presumed to be the parties' final and complete agreement. *Id.* The description of goods is complete on its face. It lists with precision the specific equipment which is subject to the lease. It does not indicate that other equipment is or may be covered. If there was an oral agreement to lease particular software, it should have been included in the lease. Further, the Lease Agreement contains a merger clause in paragraph 25.

> This lease constitutes the entire agreement between Lessor and Lessee concerning the lease of the Equipment and may be amended only by a written agreement signed by the party to be charged.

The existence of a merger clause is a strong indication on the face of the contract that the writing is intended to be complete. *Id.* at 813. *See also Union Electric Co. v. Fundways, Ltd.*, 886 S.W.2d 169, 170–71 (Mo.App. 1994); *W.E. Koehler Construction Co., Inc., v. Medical Center*, 670 S.W.2d 558, 562 (Mo. App.1984); *Carlson v. Tandy Computer Leasing*, 803 F.2d 391, 395 (8th Cir.1986) (applying Missouri law).

■ Lark also contends the contract is patently ambiguous. Whether an agreement is ambiguous is a question of law. A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Byers*, 834 S.W.2d at 813. A contract is not ambiguous merely because the parties disagree over its meaning. *Id.* "In determining whether a contract term is ambiguous, the court should consider all relevant evidence, other than the oral statements by the parties of what they intended." *Aluminum Prod.*, 758 S.W.2d at 124. A patent ambiguity arises from the face of the document. *Byers*, 834 S.W.2d at 816.

Here, the description of the equipment to be delivered does not on its face indicate it is ambiguous. It describes in technical language particular equipment which is the subject of the lease. There is no patent ambiguity which would allow the introduction of evidence that the parties intended the lease to cover specific software not listed in the lease.

■ Lark next argues that the evidence was offered to show failure of consideration and is thus not barred by the parol evidence rule. He refers us to an exception to the parol evidence rule that "[c]onsideration, or lack thereof, may always be shown by extrinsic evidence in a controversy between the original parties to an agreement even if the evidence tends to vary the consideration stated in the agreement." *Rose v. Howard*, 670 S.W.2d 142, 145 (Mo.App.1984).

■ This exception applies only to contracts in which the named consideration is a mere recital of a fact of something done, such as the acknowledgement of the receipt of

payment. *Meyer v. Weber,* 233 Mo.App. 832, 109 S.W.2d 702, 705 (1937). If the expressed consideration is one of the terms of the contract itself, then the consideration is considered a part of the contract which cannot be contradicted, added to, or subtracted from by parol. *Id.; Ezo v. St. Louis Smelting & Refining Co.,* 87 S.W.2d 1051, 1053 (Mo.App. 1935). *See also Roberts v. Browning,* 610 F.2d 528, 535 (8th Cir.1979) (applying Missouri law).

In this case, the consideration to which Lark refers is the computer equipment which is specifically described in the lease. This is contractual consideration. Parol evidence is thus not admissible to vary the named consideration.

The trial court did not err in excluding the challenged evidence. Points one and two are denied.

### Directed Verdict

In his third point Lark alleges that the trial court erred in directing a verdict in favor of CIT on his counterclaim because the trial court erroneously excluded the evidence concerning the release ten drivers which he claims would have established his case and because CIT was not a holder in due course.

▪ Lark failed to preserve these issues for review. An alleged error in the entry of a directed verdict in a jury-tried case must be included in the motion for new trial to preserve it for review. *Brouk v. Brueggeate,* 849 S.W.2d 699, 702 (Mo.App.1993); *Robert E. Denton, Inc. v. Spelman Memorial Hosp.,* 784 S.W.2d 810, 813 (Mo.App.1990); Rule 78.07. Lark did not challenge the entry of the directed verdict in his motion for new trial but sought a new trial only on the judgment on the jury verdict. Accordingly, Lark's claim is not entitled to review on the merits.

▪ Lark has not requested plain error review under Rule 84.13. We may consider plain error affecting substantial rights on appeal if we find manifest injustice or a miscarriage of justice has resulted. *Brouk,*

849 S.W.2d at 702. In this case we do not find plaintiff has sustained manifest injustice or a miscarriage of justice as a result of the trial court's entry of a directed verdict. Point three is denied.

### Waiver of Jury

For his last point Lark asserts that the trial court erred in denying both parties' request to waive a jury. The record does not support Lark's contention that both parties waived the right to a jury trial. Rule 69.01(b) states:

Parties shall be deemed to have waived trial by jury:

(1) by failing to appear at the trial;

(2) by filing with the clerk written consent in person or by attorney;

(3) by oral consent in court, entered on the minutes;

(4) by entering into trial before the court without objection.

The record does not reflect that any of these actions were taken. The trial court did not err in conducting a jury trial in this case. Point four is denied.

The judgment of the trial court is affirmed.

CRANDALL and DOWD, JJ., concur.